IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| BARBER & ROSS COMPANY, | ) | Case No. 07-50546 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| BARBER & ROSS COMPANY, | ) | |
| | ) | Adversary Proceeding No. 09-05081 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Cross Motions for Summary Judgment |
| | ) | |
| SCP BUILDING PRODUCTS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM DECISION

The parties to this adversary proceeding have filed competing motions for summary judgment asserting entitlement to certain monies held in an escrow account which were disbursed to the Defendant within days after the commencement of this bankruptcy case. For the reasons which follow the Court will deny both motions.

## FINDINGS OF FACT

The dispute between the Debtor ("B&R") and the Defendant ("SCP") has its origin in a sale of the assets and business of a B&R subsidiary, Barber & Ross Company of Indiana, Inc., to SCP pursuant to a lengthy (47 pages) Asset Purchase Agreement[1] dated May 25,

---

[1] Exhibit A to Brief in Support of Defendant's Motion for Summary Judgment on Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 549 and 550 ("Defendant's Brief"). Also designated as Exhibit A to Plaintiff's (1) Response to Defendants' Motion for

2006 for the sum of nine million dollars. The parties agreed to place 10% of the sale price in escrow to assure the purchaser that certain post-closing obligations of B&R, principally relating to satisfaction of warranty claims for pre-sale products manufactured and sold by the subsidiary, would be satisfied by the seller. The escrow agent appears to have been the law firm which represented SCP in the purchase transaction. In general terms, the escrow account was to continue for up to two years following closing of the transaction, after which any remaining proceeds not in dispute would be distributed to B&R. According to section 3 of the Escrow Agreement[2] dated May 25, 2006 which established this account, its purpose was stated to be "to secure the indemnification obligations of the Seller [(the subsidiary)] and the Stockholder [(B&R)] contained in Section 9.2(a) of the Asset Purchase Agreement."

The Escrow Agreement is a seven page single spaced detailed document setting forth the procedures to be followed in determining the ultimate ownership of the funds placed in the escrow account. As relevant to the present controversy, it specifies in section 4(a) the necessary content of the "Buyer's Certificate" to be submitted by SCP to the escrow agent if it wished to make a claim against the escrowed funds as follows:

> (a)    If at any time on or prior to the two year anniversary of the Closing Date (the "Distribution Date"), the Buyer shall deliver to the Escrow Agent a certificate of Buyer, executed by an officer of Buyer (a "Buyer's Certificate"), which Buyer's Certificate shall:

---

Summary Judgment on Complaint to Avoid and Recover Transfers Pursuant to 11 USC §§ 549 and 550 and (2) Memorandum of Law in Support of Plaintiff Barber & Ross Company's Cross Motion for Summary Judgment Against Defendant SCP Building Products, LLC ("Plaintiff's Response"). This document will be referred to as the "Asset Purchase Agreement."

[2] Exhibit B to Defendant's Brief. Also designated as Exhibit B to Plaintiff's Response. This document will be referred to as the "Escrow Agreement."

>    (i)    state that Buyer has paid or incurred a Loss and is entitled to indemnification under Section 9.2(a) of the Asset Purchase Agreement (or has received notice of a third-party claim or has discovered facts upon which it intends to base a claim for indemnification under Section 9.2(a) of the Purchase Agreement) (each an "Indemnification Item");
>
>    (ii)    state the aggregate amount, or its good faith estimate of the aggregate amount, of each such Indemnification Item; and
>
>    (iii)    specify in reasonable detail the nature and amount (or estimated amount) of each Indemnification Item[.]

By means of a letter dated July 10, 2007 addressed to the escrow agent, SCP made a claim against all of the remaining funds then held in escrow. That letter reads as follows:

>    Reference is made to the Asset Purchase Agreement and the Escrow Agreement. Capitalized terms that are used in this letter (the "Letter Agreement") that are not defined herein shall have the respective meanings that are ascribed to such terms in the Asset Purchase Agreement. This letter shall be considered a Buyer's Certificate (as defined in Paragraph 4(a) the Escrow Agreement). Pursuant to Paragraph 4(a) of the Escrow Agreement Buyer states:
>
>    (i)    Buyer has incurred a Loss and is entitled to indemnification under Section 9.2(a) of the Asset Purchase Agreement;
>
>    (ii)    The aggregate amount of the Loss is in excess of $450,000, including amounts for losses to date as well as losses reasonably anticipated after this date; and
>
>    (iii)    The Loss results from Seller and Stockholder's refusal and/or failure to honor Warranty Claims in violation of the Asset Purchase Agreement and Seller and Stockholder's failure and/or refusal to reimburse Buyer for Warranty Work performed pursuant to the Transition Agreement, in violation of the terms therein.
>
>    Buyer requests payment from the Escrow Fund, pursuant to Paragraph 4 of the Escrow Agreement, in the full amount of the Escrow Fund.

(Exhibit C to Defendant's Brief (the "July 10 Letter").) That letter was apparently received by the escrow agent on the following day because on July 11 the law firm "Via Fed Ex" sent a letter to B&R, with a copy to the latter's counsel in the sale transaction, advising of the receipt of the claim and enclosing a copy of the July 10 Letter.[3] The Escrow Agreement required a response from B&R within thirty days if it objected to the demand contained in a "Buyer's Certificate" and if it failed to do so, the escrow agent was authorized to disburse the demanded funds to SCP. Neither B&R nor anyone on its behalf responded to the July 10 Letter or the July 11 notice within the prescribed thirty day period or at any time thereafter. On August 13, 2007 the law firm disbursed the existing balance of the escrow account in the amount of $422,717.18 to SCP and notified B&R to such effect by a letter dated August 13,[4] to which again B&R, which by then was the subject of an involuntary petition in this Court, made no response.

This bankruptcy case was commenced as an involuntary Chapter 7 petition filed against the Debtor on August 10, 2007. No formal order of relief appears to have been issued by the Court, but on October 2, 2007 the Debtor, by counsel, filed a motion in the case seeking its conversion to Chapter 11. That motion was granted by this Court pursuant to an order entered on October 24, 2007. The Debtor filed a complaint initiating this adversary proceeding on August 9, 2009.

The timing of SCP's demand for the balance of funds held in the escrow account is interesting. As already noted, that demand was asserted on July 10, 2007. It is a matter of no factual dispute in a separate adversary proceeding now pending in this Court filed by the Debtor

---

[3] Exhibit D to Defendant's Brief.

[4] Exhibit E to Defendant's Brief.

4

against Wachovia Bank, the Debtor's principal pre-petition lender, that on June 29, 2007 Wachovia declared all of its loans outstanding to B&R due and payable and proceeded to give notice to the latter's accounts receivable obligors to make payment directly to Wachovia, which is alleged to have resulted in B&R's immediate closure and cessation of its business operations. The evidence before the Court in this adversary proceeding does not show whether Wachovia had made demand upon SCP or the escrow agent to make payment to it of the funds in the escrow account or whether SCP had otherwise become aware of Wachovia's action prior to July 10.

To the extent that it is a question of fact, the Court observes that the July 10 Letter purporting to be a "Buyer's Certificate" does not appear to comply, either precisely or substantially, with the requirements set forth in the Escrow Agreement for such a document. The reasons for that observation are two. First, the Escrow Agreement required that SCP must set forth each "Indemnification Item" for which it demanded to be paid, the "aggregate amount . . . of each such . . . Item," and "specify in reasonable detail the nature and amount . . . of each such . . . Item." (Escrow Agreement at 2, section 4(a)(ii) and (iii).) The July 10 Letter does not appear to even attempt to meet those requirements but rather simply asserts that SCP had incurred a "Loss in excess of $450,000, including amounts for losses to date as well as losses reasonably anticipated after this date." Second, the demand made clear that SCP was seeking payment not only for unspecified losses it had actually paid or incurred, but also for equally unspecified losses which it "reasonably anticipated" to incur in the future, this at a time when it had more than ten months remaining under the term of the Escrow Agreement during which it might assert claims pursuant to its provisions.

Although SCP received the proceeds of the escrow account after the commencement of the bankruptcy case and therefore after the automatic stay in bankruptcy had become effective, at no time has it filed in this case a motion pursuant to § 362(d) of the Bankruptcy Code seeking annulment of, or any other relief from, such stay.

## CONTENTIONS OF THE PARTIES

SCP asserts that as a matter of law it is entitled to retain the funds wired to its account on August 13, 2007 from the escrow account because such funds were not "property of the [bankruptcy] estate" as is requisite for an action under 11 U.S.C. § 549. It contends that SCP made a proper demand for the escrow funds pre-petition and that as of the petition date B&R's interest in the funds was merely contingent and B&R was required to respond to SCP's demand or the contingent interest would expire. Accordingly, as SCP contends, because B&R had only a contingent right, which it contends expired, the funds were never property of the estate.

B&R, on the other hand, contends that once the petition was filed, the remaining funds then held in the escrow account were "property of the estate" and their transfer by the escrow agent to SCP was not authorized by the Bankruptcy Code or by this Court. Accordingly, such transfer as a matter of law is avoidable pursuant to § 549(a) by B&R in its capacity as debtor-in-possession having the powers of a bankruptcy trustee. B&R also contends that SCP violated § 108(b) of the Bankruptcy Code when it took the escrowed funds prior to expiration of the extended deadline by which B&R had the opportunity to object to the July 10 Letter. Finally, B&R contends that SCP violated the terms of the Asset Purchase Agreement.

**CONCLUSIONS OF LAW**

The Court has jurisdiction over this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. Although adversary proceedings seeking recovery of property of the bankruptcy estate pursuant to 11 U.S.C. § 549 are not explicitly named as "core" bankruptcy proceedings in 28 U.S.C. § 157(b)(2), such subsection in subparagraph (E) does specify "orders to turn over property of the estate" as being included within the non-exclusive list of expressly specified "core" matters. In addition, subparagraph (O) of such subsection also designates "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship" as being "core" matters. In view of the fact that the transfer of funds out of the escrow account occurred after the commencement of the bankruptcy case, the Court concludes that the present adversary proceeding is a "core" proceeding within the meaning of § 157(b)(2). An action under § 549 is timely if it is brought within two years "after the date of the transfer sought to be avoided;" provided that the underlying bankruptcy case has not been previously closed or dismissed. 11 U.S.C. § 549(d).

By virtue of Bankruptcy Rule 7056 the provisions of Federal Rule of Civil Procedure 56 are applicable to adversary proceedings in bankruptcy. The standard to be used by a court in determining motions pursuant to such Rule is set forth in the Rule itself. Subsection (c) of the Rule provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In short, two standards must be met – no "genuine issue" as to any "material" fact can be in question, and

entitlement to judgment as a "matter of law" on the basis of those facts.  While there appears to be little, if any, dispute about the relevant facts of this matter, the Court may not enter judgment in favor of either party unless it is satisfied that such party is entitled to judgment as a matter of law.

The parties have expended considerable effort in seeking to persuade the Court that the money in the escrow account on August 10, 2007, the filing date of the involuntary petition, was or was not "property of the estate" within the meaning of 11 U.S.C. § 549(a).  The Court agrees with SCP's contention that the funds in question were not themselves property of the estate because they were held in an escrow account.  This Court will follow the teaching of Judge St. John's learned opinion in the case of *In re Holmes Environmental, Inc.*, 287 B.R. 363, 376 (Bankr. E.D. Va. 2002), quoting from several prior bankruptcy court decisions, that funds in an escrow account are not property of the estate when the escrow fund has served as "an assurance or guarantee fund."  The stated purpose of the escrow account as expressed in the Escrow Agreement being to secure to SCP the performance of B&R's indemnification obligations under the transaction documentation, the Court concludes that it was intended to serve as "an assurance or guarantee fund."  Accordingly, the contention by B&R that the escrowed funds were property of the bankruptcy estate must be rejected.  However, even though the escrow account itself was not property of the estate, it is equally clear that the Debtor's rights in such account were property of the estate by virtue of 11 U.S.C. § 541(a)(1), which includes in the estate "all legal or equitable interests of the debtor in property as of the commencement of the case."  The estate includes all such property interests "wherever located and by whomever held[.]"  11 U.S.C. § 541(a).  Such subsection further specifies that the "commencement of a

case under section 301, 302, or 303 . . . creates an estate." *Id.* As counsel for both parties appeared to acknowledge at the hearing upon their competing motions, the Debtor's rights in the escrow account as of the filing date were those defined by the contracts between the parties. In the words of the widely recognized and honored treatise, *Collier on Bankruptcy*, "[e]state property is confined to the rights conferred upon the debtor by the escrow agreement, not property rights in the assets escrowed." 5 *Collier on Bankruptcy* ¶ 541.09[2] at page 541-45 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (citing *Stevenson v. J.C. Bradford & Co.* (*In re Cannon*), 277 F.3d 838, 850 (6th Cir. 2002) and *Dzikowski v. NASD Regulation, Inc.* (*In re Scanlon*), 239 F.3d 1195, 45 C.B.C.2d 820 (11th Cir. 2001)). To summarize, the filing of the petition against the Debtor did not remove the escrowed money from the strictures of the Escrow Agreement, but it did subject the Debtor's as well as SCP's rights in the account to applicable provisions of the Bankruptcy Code.

Although no order for relief had been entered by this Court at the time the escrowed funds were wired to SCP's account, 11 U.S.C. § 362(a) makes the filing of a petition under sections 301, 302 or 303 the event which creates the stay which is applicable to "all entities." The scope of the automatic stay is exceedingly broad and includes within its prohibitions "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). While SCP might argue that its claim was made against the escrow account rather than B&R, it is clear that the escrow account only existed to secure to SCP the satisfaction of B&R's indemnification obligations under the Asset Purchase Agreement. In short, SCP's claim was against B&R and the existence of the escrow account simply served as a remedy to assure the former's ability to obtain

fulfillment of its right to indemnification.  Accordingly, the Court concludes that the wiring of the escrow account balance to SCP after the filing of the petition was an "act" which enabled SCP to "recover a claim against the debtor which arose before the commencement" of the Debtor's bankruptcy case within the meaning of § 362(a)(6).  This Court has previously held, in accordance with the great weight of authority, that an act which violates the automatic stay is "void."  *Ward v. I.R.S.*, 261 B.R. 889, 893 (Bankr. W.D. Va. 2001); *see also In re Moore*, 350 B.R. 650, 655 (Bankr. W.D. Va. 2006) (Chief Judge Krumm of this Court holding that actions in violation of the stay are "void *ab initio* and without effect") *and* 3 *Collier on Bankruptcy* ¶ 362.11[1] at page 362-122 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.) (noting that "[m]ost courts have held that actions taken in violation of the stay are void and without effect").  Knowledge of the existence of the automatic stay is immaterial to the determination of whether an act in contravention of the automatic stay has occurred.  *In re Moore*, 350 B.R. at 655.  Of course proof of knowledge of the existence of the stay is quite material to the correct determination of a motion seeking damages pursuant to § 362(k)(1) for a "willful violation of a stay[.]"

    To the extent that it is a question of law, the Court concludes preliminarily and for the purpose of ruling upon the motions now before it that SCP's letter dated July 10, 2007 did not qualify, either precisely or substantially, as a Buyer's Certificate under the terms of the Escrow Agreement for the same reasons already expressed in the Findings of Fact portion of this Memorandum Decision.  The Court further preliminarily concludes that SCP and its law firm serving as escrow agent could not create an obligation upon B&R to respond to a demand for payment by submitting and accepting a document which failed to meet the requirements of a

qualifying Buyer's Certificate set forth in the Escrow Agreement. The Court doubts that the failure of the escrow agent to require compliance with the terms of the Escrow Agreement can create an obligation on B&R's part incompatible with the terms of such Agreement.

Accordingly, the Court concludes that SCP's motion ought to be denied for two reasons – (i) its action in accepting the wiring of the funds from the escrow account after the filing of the petition constituted an act to recover on a claim against the Debtor in violation of the automatic stay which was void, whether or not at that exact time it was aware of the filing, and it has not taken any action to seek to obtain an annulment of the stay, and (ii) the July 10 Letter failed to comply substantially with the provisions of the Escrow Agreement and therefore was inadequate to impose an obligation on B&R's part to respond to it. The Court further concludes that B&R's motion ought to be denied because only the Debtor's rights under the Escrow Agreement were included in the property of the bankruptcy estate, not the escrow account itself, and therefore its rights are defined by the provisions of that Agreement and the Asset Purchase Agreement. Although the Escrow Agreement provides in section 12 that the duties of the escrow agent are governed by Michigan law, it does not address the question of governing law with respect to the rights of the parties themselves, other than the escrow agent, under such Agreement. On the other hand, the Asset Purchase Agreement provides in section 10.3 more generally that it "will be construed, interpreted and the rights of the Parties determined in accordance with the laws of the State of Indiana . . . ." The ultimate rights of the competing parties in the escrow account balance which existed on the filing date are not so apparent as to make either party entitled to a judgment determining the ownership of such account as a matter of law at this stage of the adversary proceeding. Because all of the issues influencing the Court's

rulings have not been fully briefed by the parties, it is not necessary for the Court at this point to make final findings of fact and conclusions of law as to such issues. All that it is necessary for the Court to determine now is that neither party has demonstrated that it is entitled to obtain judgment in its favor as a matter of law. An order denying both motions for summary judgment will be entered contemporaneously herewith.

DECIDED this 24th day of June, 2010.

/s/ William F. Stone, Jr.
UNITED STATES BANKRUPTCY JUDGE